THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM F JENSEN,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>MIKE OBENLAND,<br><br>　　　　　　Respondent. | CASE NO. C15-1094 JCC<br><br>ORDER DENYING PETITION FOR HABEAS CORPUS |

This matter comes before the Court on Petitioner's objections to Magistrate Judge Brian Tsuchida's Report and Recommendation (Dkt. No. 24). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

I.  **BACKGROUND**

Petitioner William Jensen was convicted in Washington Superior Court of four counts of solicitation to commit first degree murder. (Dkt. No. 13, Ex. 2, at 2–3.) The intended targets were his wife, sister-in-law, and two children. (*Id.*)

Mr. Jensen appealed his conviction to the Washington Court of Appeals, which affirmed. (*Id.* at 4.) On review, the Washington Supreme Court vacated two of the convictions, holding that Mr. Jensen was liable for only two counts of solicitation under Washington's unit of

prosecution rule. (*Id.* at 16.) On remand, the superior court vacated two of the counts and sentenced Mr. Jensen on the remaining two. (*Id.*, Exs. 1 and 15.) The court of appeals affirmed, and the Washington Supreme Court denied review. (*Id.*, Exs. 19–20, 25.)

In 2010, Mr. Jensen filed a personal restraint petition in the court of appeals. (*Id.*, Exs. 27–32.) The court of appeals denied the petition, and the Washington Supreme Court denied review without comment. (*Id.*, Exs. 33, 35.)

Mr. Jensen now seeks habeas relief from his solicitation convictions under 28 U.S.C. § 2254. (Dkt. No. 1.) In his R&R, Judge Tsuchida recommended that Mr. Jensen's petition be denied. (Dkt. No. 25.) Mr. Jensen objects to Judge Tsuchida's R&R on multiple grounds.

## II. DISCUSSION

### A. Standard of Review Under 28 U.S.C. § 2254

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition can only be granted if a state court adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Review under § 2254(d) is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal quotation marks omitted).

Under § 2254(d)(1), federal law is "clearly established" only if it is based on a United States Supreme Court holding that governed at the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To determine whether a particular decision is "contrary to then-established law, a federal court must consider whether the decision applies a

rule that contradicts [such] law and how the decision confronts [the] set of facts that were before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (internal quotation marks omitted). If the state court decision "identifies the correct governing legal principle" in existence at the time of its application, a federal court must assess whether the decision unreasonably applies that legal principle to the facts in the petitioner's case. *Id.* (quoting *Williams*, 529 U.S. at 413). It is not enough that a federal court be persuaded that the decision is erroneous. *Williams,* 529 U.S. at 411. Rather, the appropriate inquiry is whether the state court's application of federal law was objectively unreasonable. *Id.* at 409.

Under § 2254(d)(2), "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (internal citation omitted). AEDPA demands deference to state court findings of fact, subject to a federal court's "real, credible doubts about the veracity of essential evidence and the person who created it." *Hall v. Dir. of Corrections*, 343 F.3d 976, 984 n.8 (9th Cir. 2003).

   B.   **Petitioner's Objections to the R&R**

A district court reviews *de novo* the parts of a Magistrate Judge's R&R to which any party objects. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). "A party properly objects when he or she files 'specific written objections' to the magistrate judge's report as required under Federal Rule of Civil Procedure 72(b)(2)." *Wallin v. Holbrook*, No. C11-2165-JCC, 2012 WL 4792923, at *2 (W.D. Wash. Oct. 9, 2012). Mr. Jensen objects with varying levels of specificity to the R&R's disposition of each of his seven habeas claims. (Dkt. No. 24.) The Court

ORDER DENYING PETITION FOR HABEAS
CORPUS
PAGE - 3

will address Mr. Jensen's objections in the order he raised them in his most recent briefing.

### 1. Objection One: Double Jeopardy

Mr. Jensen was originally convicted of four counts of solicitation to commit murder, with one count per victim: Count I was his wife, Count II his sister-in-law, Count III his daughter, and Count IV his son. (Dkt. No. 13, Ex. 33, at 2.) On appeal, the Washington Supreme Court found that because the unit of prosecution for solicitation focuses on the number of solicitations rather than the number of victims, Mr. Jensen was only liable for two counts. (*Id.* at 2–3.) Therefore, the first count should have been for the first solicitation to murder his wife, sister-in-law, and daughter, and the second count for the second solicitation to murder his son. (*Id.*, Ex. 2, at 14–16.)

The supreme court directed the superior court to vacate two of Mr. Jensen's solicitation convictions and to resentence him on the two remaining counts. (*Id.* at 16.) On remand, the superior vacated Counts III (daughter) and IV (son) and sentenced Mr. Jensen on Counts I (wife) and II (sister-in-law). (*Id.*, Ex. 1, at 1–2.) In other words, the superior court resentenced him to two counts for the same solicitation—the murder of his wife, sister-in-law, and daughter. On review, the court of appeals held that the superior court had intended to sentence Mr. Jensen as the supreme court directed but made a mistake. (*Id.*, Ex. 33, at 3.)

Mr. Jensen argues that this was an unreasonable determination of the facts, and that the transcript instead reveals that the prosecution and superior court intentionally imposed a sentence on Counts I and II. Although Mr. Jensen fails to establish why it matters whether the superior court's error was purposeful, the Court nonetheless disagrees with his factual analysis. The transcript demonstrates that both the prosecutor and the superior court judge were aware that the supreme court had directed them to vacate two counts and resentence Mr. Jensen on the

ORDER DENYING PETITION FOR HABEAS
CORPUS
PAGE - 4

will address Mr. Jensen's objections in the order he raised them in his most recent briefing.

### 1. Objection One: Double Jeopardy

Mr. Jensen was originally convicted of four counts of solicitation to commit murder, with one count per victim: Count I was his wife, Count II his sister-in-law, Count III his daughter, and Count IV his son. (Dkt. No. 13, Ex. 33, at 2.) On appeal, the Washington Supreme Court found that because the unit of prosecution for solicitation focuses on the number of solicitations rather than the number of victims, Mr. Jensen was only liable for two counts. (*Id.* at 2–3.) Therefore, the first count should have been for the first solicitation to murder his wife, sister-in-law, and daughter, and the second count for the second solicitation to murder his son. (*Id.*, Ex. 2, at 14–16.)

The supreme court directed the superior court to vacate two of Mr. Jensen's solicitation convictions and to resentence him on the two remaining counts. (*Id.* at 16.) On remand, the superior vacated Counts III (daughter) and IV (son) and sentenced Mr. Jensen on Counts I (wife) and II (sister-in-law). (*Id.*, Ex. 1, at 1–2.) In other words, the superior court resentenced him to two counts for the same solicitation—the murder of his wife, sister-in-law, and daughter. On review, the court of appeals held that the superior court had intended to sentence Mr. Jensen as the supreme court directed but made a mistake. (*Id.*, Ex. 33, at 3.)

Mr. Jensen argues that this was an unreasonable determination of the facts, and that the transcript instead reveals that the prosecution and superior court intentionally imposed a sentence on Counts I and II. Although Mr. Jensen fails to establish why it matters whether the superior court's error was purposeful, the Court nonetheless disagrees with his factual analysis. The transcript demonstrates that both the prosecutor and the superior court judge were aware that the supreme court had directed them to vacate two counts and resentence Mr. Jensen on the

remaining two counts. (*Id.*, Ex. 15, at 4, 19.) It also demonstrates that they vacated the wrong counts in error. (*Id.* at 25–26.)

Mr. Jensen argues that this error—whether intentional or not—violated the Double Jeopardy clause because Mr. Jensen was sentenced twice for the same conduct. Mr. Jensen is incorrect. In *Missouri v. Hunter*, the Supreme Court held that "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." 459 U.S. 359, 366 (1983). Here, Mr. Jensen's punishment would have been the same had he been sentenced under Counts I and IV, as the supreme court intended, or under Counts I and II, as the superior court actually ordered. (Dkt. No. 13, Ex. 33, at 4 n.2; Dkt. No. 13, Ex. 15 at 3).  His punishment was therefore no greater than the legislature intended. The superior court's sentencing mistake was merely an error of state law, and as the Supreme Court "ha[s] stated many times… federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotation marks omitted).

The Court therefore denies Mr. Jensen's first objection.

### 2.     Objection Two: Competency

Mr. Jensen next argues that that he was incompetent to stand trial, that his trial counsel was ineffective for not raising competency at trial, and that the court of appeals improperly declined to hold an evidentiary hearing on this issue during post-conviction review. The Court will address each of these arguments in turn.

#### a.     Competency at Trial

A defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding… [and] has a rational as well as

ORDER DENYING PETITION FOR HABEAS
CORPUS
PAGE - 5

factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). On appeal, a petitioner is required "to shoulder the burden of proving his incompetence by a preponderance of the evidence." *Cooper v. Oklahoma*, 517 U.S. 348, 355 (1996).

The court of appeals correctly recognized that the standard for competency is whether Mr. Jensen "under[stood] the nature of the charges" and was "capable of assisting in his defense." (Dkt. No. 13, Ex. 33, at 6.) The court found that Mr. Jensen "provide[d] no evidence in the record that there were any questions about his competency at the time of trial." (*Id.*) Indeed, the court's findings were entirely to the contrary:

> the record suggests that Jensen was an informed and active participant in his defense. Jensen filed numerous pro se pleadings, including an articulate motion for a new trial based on ineffective assistance of counsel that was supported with legal authority and citations to the record. His testimony at trial was lengthy, coherent, and consistent, though apparently implausible to the jury. And Jensen attaches his own affidavit to this petition in which he described in detail his memory of the process that was followed during voir dire. In short, there is no evidence that anyone who interacted with Jensen at the time of trial had reason to doubt his competency.

(*Id.* at 5–6.) The Court has examined the record and finds that this determination was reasonable. At trial, Mr. Jensen gave detailed testimony about his education, marriage, personal life, and employment as a law enforcement officer. (Dkt. No. 13, Ex. 49, at 64–73.) He provided a coherent counternarrative to the prosecution's solicitation charges. (*Id.* at 92.) And throughout his testimony, his answers were responsive to counsel's questioning. Following the verdict, Mr. Jensen filed an articulate, well-cited pro se motion seeking a new trial. (*Id.*, Ex. 30, at App'x A.) But after consulting with his new counsel, Mr. Jensen agreed not to pursue the claims raised in this motion as they would not benefit his case. (*Id.*, Ex. 53, at 4.) All of this demonstrates that Mr. Jensen understood the charges against him and ably assisted in his own defense. Moreover, the Ninth Circuit has found "significant the fact that the trial judge, government counsel, and

[defendant's] own attorney did not perceive a reasonable cause to believe [defendant] was incompetent." *United States v. Lewis*, 991 F.2d 524, 528 (9th Cir. 1993). That was precisely the case here.

Mr. Jensen argues that all of this evidence is overcome by the opinion of Dr. George W. Woods, Jr., who evaluated him more than five years after trial. (Dkt. No. 13, Ex. 33, at 6.) Mr. Jensen argues that the court of appeals summarily dismissed Mr. Woods's opinion based on the decisions of other courts that previously rejected his opinion. This is an incorrect reading of the record. The court of appeals did not summarily dismiss Mr. Woods's opinion; rather, it found it "insufficient to establish facts that would entitle Jensen to relief." (*Id.* at 8.) And although the court noted that a number of other courts have "expressly rejected Dr. Woods's opinion," it did not rely only on this fact. (*Id.* at 7 n.3.) Instead, the court found Dr. Woods's report insufficient because it was "entirely conclusory." (*Id.* at 7.)

Mr. Jensen has therefore failed to establish that the court of appeals was unreasonable in finding him competent to stand trial.

### b.   Ineffective Assistance of Counsel

In his objections to the R&R, Mr. Jensen reiterates his argument that trial counsel was ineffective for failing to investigate Mr. Jensen's competency, and for failing to present this evidence to the trial court. In doing so, however, he objects to the R&R in the most general way, arguing only that "Mr. Jensen claimed that he was incompetent at the time of trial and that his attorney was ineffective for failing to investigate and present this fact." (Dkt. No. 24 at 7.) As the Court has held, "summaries of arguments previously presented, have the same effect as no objection at all, since the Court's attention is not focused on any specific issues for review." *Wallin*, 2012 WL 4792923, at *2.

...

While the Court need not review this vague objection, it nonetheless notes that Mr. Jensen has failed to overcome the strong presumption that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). The Court has examined Mr. Jensen's briefing, and his sole basis for arguing that counsel was ineffective is his assertion that counsel was aware that Mr. Jensen believed his mind- and mood-altering medications "were having an affect [sic] on him." (Dkt. No. 24 at 14; Dkt. No. 13, Ex. 53, at 4.) Given all of the other evidence that Mr. Jensen was more than competent to stand trial, his counsel was hardly ineffective for deciding not to argue incompetency on this basis.

Finally, Mr. Jensen has also made no showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 695.

Mr. Jensen has therefore failed to establish that the court of appeals was unreasonable in finding his trial counsel effective.

### c. Post-Conviction Evidentiary Hearing

Mr. Jensen also argues that the court of appeals was unreasonable in finding him competent to stand trial because it did not conduct an evidentiary hearing. If a reviewing court possesses a "genuine doubt" as to a defendant's competence, "due process requires the court on its own motion to hold a hearing and inquire into the defendant's competence." *States v. Lewis*, 991 F.2d 524, 527 (9th Cir. 1993). "A good faith doubt about a defendant's competence arises if there is substantial evidence of incompetence." *Id*; *see also Panetti v. Quarterman*, 551 U.S. 930, 949 (2007) (holding that a defendant must make "a substantial threshold showing of insanity" before a "fair hearing" is required).

As the Court has already explained, there was essentially no evidence at trial of Mr. Jensen's incompetency. On appeal, the only additional evidence Mr. Jensen presented was Dr. Woods's report. The court of appeals could therefore have reasonably decided that Mr. Jensen did not make a "substantial threshold showing" of insanity and thus did not need to hold an evidentiary hearing.

The Court therefore denies Mr. Jensen's second objection.

### 3. Objection Three: Public Trial

Mr. Jensen's next objection is that the trial court violated his public trial right by sealing the juror questionnaires and excluding the public from voir dire.

A defendant has a right to a public trial, and this right extends to voir dire. *Presley v. Georgia*, 558 U.S. 209, 213 (2010). But the Supreme Court has never held that the sealing of juror questionnaires violates the public trial right. Therefore, the court of appeals' decision that the sealing of the juror questionnaires did not violate Mr. Jensen's public trial right was not contrary to well-established federal law.

Mr. Jensen also argues that his public trial right was violated because the trial court allegedly closed the courtroom to the public during voir dire. Mr. Jensen's own affidavit was the only evidence he presented that this closure actually occured. (Dkt. No. 13, Ex. 33, at 12–13.) In it, he alleged that the courtroom was closed to the public because: (1) all the seats in the courtroom were taken up by jurors, except for one row which was closed for security purposes; (2) during jury selection, someone opened the door to the courtroom from outside, spoke to the officer standing at the door, and then closed it; and (3) spectators were allowed back in the courtroom after jury selection was over. (*Id.* at 12–13.) The court of appeals reasonably found that Mr. Jensen's affidavit was speculative and did not establish that a closure actually occurred.

(*Id.*) Indeed, there are several indications in the record that there was no closure.

First, when the judge discussed seating capacity for the prospective jurors, he never mentioned closing the courtroom. (*Id.*, Ex. 40, at 9–10.) Second, when counsel proposed a "blind process" for making preremptory challenges, the judge declared instead that preremptory challenges "will be done in open court." (*Id.* at 8–9.) The reference to "open court" would have made no sense if the courtroom were closed. Third, when the defense asked for an ex parte hearing on a discovery matter, the judge stated that he would decide whether to close the courtroom based only on a proper showing. (*Id.*, Ex. 43, at 3–6.) The Court agrees with Judge Tsuchida that given the caution the trial judge demonstrated here regarding closure, it is highly unlikely that he would have closed the courtroom without comment during jury selection.

Mr. Jensen also argues that because the court of appeals was not presented with a transcript of voir dire, it was unreasonable in finding that there was no closure. The court of appeals was aware that Mr. Jensen, seemingly through no fault of his own, was unable to obtain the transcript. (*Id.*, Ex. 33, at 12 n.5.) But it also found that he did not attempt to support his closure argument through affidavits of any of the other parties who were either present or excluded from voir dire. (*Id.*)

In response, Mr. Jensen argues that he was only entitled to subpoena these witnesses if the court of appeals ordered an evidentiary hearing, which it did not. But even without subpoena power, Mr. Jensen could still have attempted to obtain witness affidavits. Under Washington state law, Mr. Jensen's own affidavit was insufficient to support his personal restraint petition or to trigger an evidentiary hearing, so he should have at least attempted to bolster his case with additional affidavits. *See In re Reise*, 146 Wash. App. 772, 789 (2008) ("We can resolve the petition solely on the current record and see no reason to remand for a reference hearing in

ORDER DENYING PETITION FOR HABEAS
CORPUS
PAGE - 10

superior court to resolve the disputed factual issues when the disputed facts arise only from a self-serving affidavit of the defendant, containing obvious fanciful declarations.") Although Mr. Jensen implies that none of the witnesses would have cooperated unless subpoenaed, there is no indication he even investigated this possibility.

The Court is limited to the record that was before the state courts. *Cullen v. Pinholster*, 563 U.S. 170, 180. On this record, it is clear that the court of appeals reasonably denied Mr. Jensen's closure claim.

The Court therefore denies Mr. Jensen's third objection.

### 4.     Objection Four: *Brady* Violation

Mr. Jensen's final objection is that the prosecution did not disclose impeachment evidence about Gregory Carpenter. Carpenter was the informant who first alerted the State that Mr. Jensen offered him money to kill his family while they were in prison together. (Dkt. 13, Ex. 2, at 2–3.) Mr. Jensen argues that the prosecution suppressed evidence showing that Carpenter was arrested for drug possession on April 22, 2004 and was testifying to avoid the consequences.

The Constitution requires "disclosure only of evidence that is both favorable to the accused and 'material either to guilt or to punishment.'" *United States v. Bagley*, 473 U.S. 667, 674 (1985) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S., at 87.

To establish materiality, the petitioner must demonstrate "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (internal quotation marks omitted). A

reviewing court must consider the undisclosed evidence in light of all the evidence presented by the prosecution, including forensic and other physical evidence and the testimony of other witnesses. *Id.* at 292–94. "[T]he question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 290 (internal quotation marks omitted).

The court of appeals applied the correct standard for reviewing a *Brady* claim. (Dkt. No. 13, Ex. 33, at 17.) It found that Mr. Jensen failed to establish that the State had not disclosed evidence of Carpenter's arrest and that this evidence was not material but merely cumulative. The court's decision on both of these grounds was entirely reasonable.

First, as the court pointed out, defense counsel impeached Carpenter with a police report stating that Carpenter had drugs in his possession when he was arrested on April 22, 2004. (*Id.*, Ex. 46, at 21–23.) The court of appeals was therefore reasonable in finding that Mr. Jensen failed to prove that the State withheld evidence about Carpenter's drug arrest on this date.

Second, Carpenter testified extensively about his criminal history on cross examination, openly admitting that he had "a lot of experience in crime." (*Id.* at 5.) He testified that he was "raised…as a criminal and a gangster," (*Id.*), was affiliated with a number of different gangs—some of which had killed people, (*Id.* at 16, 18–19, 26), and was a "professional career criminal." (*Id.* at 59.) He admitted to being an informant in other cases. (*Id.* at 38–41.) And he ended his testimony by admitting that he talked to Mr. Jensen about killing his family "to set him up for what he is being tried for now." (*Id.* at 63–64) The court of appeals was thus reasonable in finding that additional evidence about Carpenter's credibility or his reason for testifying against Mr. Jensen would have been cumulative.

The Court therefore denies Mr. Jensen's fourth objection.

ORDER DENYING PETITION FOR HABEAS CORPUS
PAGE - 12

### C. Evidentiary Hearing

Mr. Jensen generally objects to Judge Tsuchida's recommendation that he be denied an evidentiary hearing. Once again, Mr. Jensen's objection lacks the specificity required by Fed. R. Civ. P. 72(b)(2), so the Court need not consider it.

But even had Mr. Jensen properly objected, he would not have succeeded. For a petitioner to successfully challenge the adequacy of state court fact finding, the reviewing court "must be satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014). Mr. Jensen has failed to meet this standard.

Moreover, "an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief." *Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013). Because the Court has made such a determination, an evidentiary hearing would be pointless.

### D. Certificate of Appealability

Mr. Jensen does not object to Judge Tsuchida's recommendation that he be denied a certificate of appealability. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Court agrees with Judge Tsuchida that no jurist of reason could disagree with the Court's resolution of Mr. Jensen's claims or could conclude that they deserve encouragement to proceed further.

The Court therefore declines to issue a certificate of appealability.

### III. CONCLUSION

For the foregoing reasons, Mr. Jensen's habeas petition (Dkt. No. 1) is DENIED. The Court DECLINES to grant an evidentiary hearing or issue a certificate of appealability.

DATED this 19th day of May 2016.

John C. Coughenour
UNITED STATES DISTRICT JUDGE